AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) | **FILED** |
| A black Android phone in a translucent black case with IMEI: 350744861285715, CURRENTLY LOCATED AT 4328 Watt Avenue, Sacramento, California ) ) ) ) ) ) | **Oct 04, 2023**<br>CLERK, U.S. DISTRICT COURT<br>EASTERN DISTRICT OF CALIFORNIA |

Case No.  2:23-sw-1017 CKD

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-1, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841, 846 | Dist. and poss. w/intent to dist. controlled substances; conspiracy |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/

*Applicant's signature*

Michael Barge, Special Agent, DHS/HSI
*Printed name and title*

Sworn to me and signed telephonically.

Date:  October 4, 2023 at 1:14 pm

*Judge's signature*

City and state:  Sacramento, California

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR WARRANTS TO SEARCH ELECTRONIC DEVICES

I, Michael Barge, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property (four electronic devices further described in Attachments A-1 through A-4), which are currently in law enforcement possession, and the extraction from that property of electronically stored information further described in Attachment B.

2.    I am a Special Agent with the U.S. Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), presently assigned to the Office of the Assistant Special Agent in Charge, Sacramento, California.  I have been employed as an ICE/HSI Special Agent since 2004.  My duties as an HSI Special Agent include the investigation of criminal violations, including but not limited to 21 U.S.C. § 841(a)(1) and 846 (possession with intent to distribute a controlled substance and conspiracy to do same).  I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the U.S. Immigration and Customs Enforcement Special Agent Training Program.

3.    I am currently charged with investigating money laundering and drug trafficking in the Eastern District of California and elsewhere.  I have assisted and led the execution of search warrants on many occasions for controlled substances and/or related paraphernalia, indicia, and other evidence of violations of federal and state drug statutes.  Over the course of my career, I have participated in investigations targeting individuals and organizations trafficking heroin, cocaine, methamphetamine, marijuana, and other controlled substances.

4.    Based on my training and experience, and based on my interaction with other experienced Special Agents, Task Force Agents, and/or other Investigators, I have become familiar with the methods employed by drug traffickers to smuggle, safeguard, store, transport, and distribute drugs, and to collect and conceal drug related proceeds, and to communicate with other participants to accomplish such objectives.

5.    This affidavit does not contain all facts known to me regarding this investigation and reflects only those facts necessary to establish probable cause.  The investigation is ongoing, and the information contained in this affidavit reflects the information known to me at the time of the authoring of this document.  The statements in this affidavit are based upon my investigation, my training and experience, and the experience of other law enforcement agents with whom I have consulted.

1

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.     The property to be searched consists of four cellular telephones (hereinafter "the Devices"):

     a.     A black Android phone in a translucent black case with IMEI: 350744861285715, more fully described in Attachment A-1, which was seized from Alberto OJEDA-Lopez.

     b.     A light blue Android phone in a black case with IMEI: 353910/11/099571/2, more fully described in Attachment A-2, which was seized from Maria MEDINA-Silvas.

     c.     A black Android phone with IMEI: 353717345000733, more fully described in Attachment Team A-3, which was seized from Alecsa OJEDA-De Oregel.

     d.     A dark blue Maxwest flip phone with IMEI: 352839330915864 and IMEI: 352839330915872, more fully described in Attachment A-4, which was seized from the residence of Alecsa OJEDA-De Oregel.

7.     All of the Devices are currently being stored in an evidence room at the U.S. Drug Enforcement Administration (DEA) Sacramento District Office located at 4328 Watt Avenue, Sacramento, California.

8.     The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data, which is more particularly described in Attachment B.

## PROBABLE CAUSE

### A.  Background

9.     Beginning in September 2022, U.S. Homeland Security Investigations (HSI) and the U.S. Drug Enforcement Administration (DEA), with assistance from the Yuba/Sutter Narcotics Enforcement Team 5 (NET-5) and U.S. Internal Revenue Service (IRS), hereinafter referred to as the "Investigating Agencies," began conducting a joint investigation into the drug trafficking activities of Alberto OJEDA-Lopez.  The Investigating Agencies received information that OJEDA-Lopez was involved with distributing significant quantities of heroin in the Eastern District of California.  The investigation later identified OJEDA-Lopez's wife (Maria MEDINA-Silvas) and daughter (Alecsa OJEDA-De Oregel) as being responsible for distributing heroin and other controlled substances on behalf of OJEDA-Lopez's drug trafficking organization.

10.    This affidavit seeks authorization to search four cellular telephones belonging to Alberto OJEDA-Lopez, Maria MEDINA-Silvas, and Alecsa OJEDA-De Oregel that were taken into custody by the DEA during a law enforcement operation pursuant to court-approved search and arrest warrants on August 29, 2023.  The Devices are currently in law

enforcement possession and being held in a secure room at the DEA Sacramento District Office in the Eastern District of California.

**B.  September 16, 2022 Sample Delivery of Heroin**

11.   On September 16, 2022, a DEA Task Force Officer operating in an Undercover (UC) capacity met with Alberto OJEDA-Lopez at a Chevron gas station parking lot in Stockton, California.  The purpose of the meeting was to discuss the prospect of future drug transactions between the UC and OJEDA-Lopez.  During the interaction, OJEDA-Lopez told the UC he was from Sinaloa (Mexico) and in town for only one week.  OJEDA-Lopez also stated he sold heroin for $17,500.00 per kilogram and that he had eight kilograms available for sale.  The UC asked about "blue pills" (referring to counterfeit oxycodone pills containing fentanyl), and OJEDA-Lopez indicated he could supply those as well.

12.   When OJEDA-Lopez offered to provide a sample of heroin, the UC and OJEDA-Lopez agreed to meet again at the same location an hour later.  OJEDA-Lopez then provided the UC with a piece of paper with telephone number 209-561-9819 written on it.  Agents followed OJEDA-Lopez to a residence located at 4607 Garibaldi Avenue, Stockton, California, where OJEDA-Lopez was observed entering the residence.  Agents later observed OJEDA-Lopez and an unidentified Hispanic Female Adult (HFA) depart the Garibaldi residence in a silver Toyota Corolla.

13.   Later the same day (September 16, 2022), the UC obtained a sample of approximately 25 grams of suspected heroin from OJEDA-Lopez at the same Chevron parking lot in Stockton, California.  The HFA identified herself to the UC as OJEDA-Lopez's wife.  OJEDA-Lopez provided the UC with a clear plastic bag containing a hard brown substance that was later tested in a laboratory and confirmed to be heroin.  During the interaction, OJEDA-Lopez told the UC he was heading back to Sinaloa, Mexico, that his daughter would be in charge of the family business, and that she would answer the phone with the number 209-561-9819.  OJEDA-Lopez and the HFA subsequently departed the Chevron in the silver Corolla, followed by agents.

14.   Following the meeting, OJEDA-Lopez and the HFA were stopped heading southbound on Highway 99 by the San Joaquin County Sheriff's Office.  OJEDA-Lopez was identified as the driver, and the HFA was identified as the passenger.  Deputy George Negrete pulled over the vehicle for violating California Vehicle Code 21658, failure to maintain lane, by going over the fog line.  Deputy Negrete noted there was odor similar to cocaine in the silver Corolla and that both occupants appeared to be nervous.  For identification, OJEDA-Lopez provided Deputy Negrete with a U.S. Border Crossing Card and a Mexican ID card, which were both in the name of Alberto OJEDA-Lopez.  The encounter ended with OJEDA-Lopez being issued a warning.

**C.  May 11, 2023 Controlled Purchase of Heroin from Alecsa OJEDA-De Oregel**

15.   On April 20, 2023, a DEA Task Force Officer operating in an Undercover (UC) capacity, used a recorded line to call telephone number 209-808-9157, which is a phone number used

3

by Alecsa OJEDA-De Oregel.  During this call, Alecsa OJEDA-De Oregel told the UC that 209-808-9157 is her personal number and to contact her on her other line, 209-561-9819.  Later, in other communications between the UC and Alecsa OJEDA-De Oregel, the UC arranged for the future purchase of one kilogram of heroin from OJEDA-De Oregel on May 11, 2023.

16.     On May 11, 2023, the UC and Alecsa OJEDA-De Oregel met at a Home Depot parking lot in Stockton, California.  Prior to the meeting, the UC was outfitted with a concealed recorder and transmitter, which was worn for the duration of the controlled purchase.  The UC was provided with $18,000.00 in law enforcement funds for the anticipated purchase of heroin.  The UC then drove an unmarked undercover vehicle to the Home Depot parking lot.

17.     During the meeting with OJEDA-De Oregel, the UC purchased approximately one kilogram of suspected heroin from OJEDA-De Oregel in exchange for $18,000.00 in law enforcement funds.  The in-person interaction between OJEDA-De Oregel and the UC was monitored and recorded by law enforcement.  Following the controlled purchase, agents met with the UC and recovered a vacuum-sealed package containing a hard brown substance, which was later tested in a laboratory and confirmed to be heroin.

18.     During their conversation, among other things, OJEDA-De Oregel told the UC she sells drugs in the "valley" and used to transport "work" (commonly used term by drug traffickers that means drugs) to different states, including Oregon, Kansas, and Nebraska.  When the UC inquired about obtaining "pills" (by which the UC meant counterfeit oxycodone pills containing fentanyl), OJEDA-De Oregel said she would talk to her father about it.

### D. August 28, 2023 Controlled Purchase of Heroin from Alberto OJEDA-Lopez and Maria MEDINA-Silvas

19.     On August 25, 2023, the UC placed a recorded call to telephone number +52 667-477-1985, which is a phone number used by Alberto OJEDA-Lopez.  During this call, the UC arranged for the future purchase of one kilogram of heroin on August 28, 2023.

20.     On August 28, 2023, the UC met with OJEDA-Lopez and a woman identified by the UC as Maria MEDINA-Silvas in a public parking lot located near 10952 Trinity Parkway, Stockton, California.  The UC recognized MEDINA-Silvas based on her U.S. visa photograph.  Prior to the meeting, the UC was outfitted with a concealer recorder and transmitter, which was worn for the duration of the controlled purchase.  The UC was provided with $17,500.00 in law enforcement funds for the anticipated purchase of heroin.  The UC then drove an unmarked UC vehicle to the agreed upon parking lot.

21.     During the meeting with OJEDA-Lopez and MEDINA-Silvas, the UC purchased approximately one kilogram of suspected heroin in exchange for $16,500.00 in law enforcement funds.  The in-person interaction was monitored and recorded by law

enforcement.  After greeting OJEDA-Lopez outside their respective vehicles, the UC leaned in to greet MEDINA-Silvas, who was sitting in the passenger seat of her car.

22.     MEDINA-Silvas then placed a package containing the suspected heroin on the driver's seat and indicated the UC could check it.  The UC took the suspected heroin and placed it in the UC vehicle before initially handing over $17,500.00 in law enforcement funds to MEDINA-Silvas through the driver's side window.  OJEDA-Lopez and the UC then discussed the price, which led to the UC taking back one thousand dollars, resulting in a total purchase price of $16,500.00.

23.     The UC then continued to speak with OJEDA-Lopez, who agreed to sell additional kilograms of heroin to the UC the following day.  After the controlled purchase, agents met with the UC and recovered a vacuum-sealed package containing a black wrapped substance which appeared to be heroin.  The heroin was later sent to a laboratory for testing and analysis, and those test results returned as positive for heroin.

   **E.  August 29, 2023 Traffic Stop and Search of 4607 Garibaldi Avenue**

24.     Based on the above facts, a federal search warrant signed by Judge Carolyn K. Delaney, Magistrate Judge in the Eastern District of California, was executed at 4607 Garibaldi Avenue, Stockton, California, on August 29, 2023.  The warrant authorized the search and seizure of controlled substances, U.S. currency, cellular telephones, firearms and ammunition, and other items relating to violations of 21 U.S.C. § 841(a)(1) and 846.

25.     Before executing the search warrant, the Investigating Agencies set up another controlled purchase of heroin from Alberto OJEDA-Lopez.  At approximately 11:40 a.m., California Highway Patrol (CHP) Officer Eric Lagge in a marked CHP vehicle observed a silver Toyota Corolla exiting Highway 99 onto the frontage road near Eight Mile Road in Stockton, California.  Officer Lagge observed that OJEDA-Lopez and MEDINA-Silvas were inside the vehicle based on their U.S. visa database photos.

26.     At this point, CHP Officer Lagge pulled over the silver Corolla in the parking lot of a Chevron gas station located at 10878 North Highway 99, Stockton, California.  Law enforcement conducted a felony stop, and OJEDA-Lopez and MEDINA-Silvas were both taken into custody pursuant to federal arrest warrants authorized by U.S. Magistrate Judge Carolyn K. Delaney for a violation of 21 U.S.C. § 841(a)(1) (distribution of heroin).

27.     A search incident to arrest of the silver Corolla revealed two vacuum-sealed black wrapped packages containing suspected heroin.  In addition to the suspected heroin that was seized, two cellular telephones in the possession of Alberto OJEDA-Lopez and Maria MEDINA-Silvas were also processed into evidence.  The cellphones and their place of origin are described below:

   •  A black Android phone in a translucent black case with IMEI: 350744861285715, more fully described in Attachment A-1, which was seized from the person of Alberto OJEDA-Lopez.

- A light blue Android phone in a black case with IMEI: 353910/11/099571/2, more fully described in Attachment A-2, which was seized from the person of Maria MEDINA-Silvas.

28.  At approximately 1:18 p.m., the Investigating Agencies, with assistance from the CHP and local law enforcement, executed the federal search warrant authorized by U.S. Magistrate Judge Carolyn K. Delaney to search the residence of 4607 Garibaldi Avenue, Stockton, California.

29.  Agents conducted a knock and announcement, and the front door was answered by Alecsa OJEDA-De Oregel. OJEDA-De Oregel was detained and later taken into custody pursuant to a federal arrest warrant authorized by U.S. Magistrate Judge Carolyn K. Delaney for a violation of 21 U.S.C. § 841(a)(1) (distribution of heroin). No other individuals were encountered at the residence, which was described as a one-story home with a living room, kitchen, three bedrooms, a bathroom, a laundry room, and a detached garage with an adjoining storage room.

30.  Seized pursuant to the search warrant, among other things, were the following items: suspected heroin and other controlled substances; U.S. currency; two cellular telephones; and a bottle containing Norco pills.

31.  Regarding the location of the two seized cellular telephones: As the residence was being secured, a black Android phone was taken from the hand of OJEDA-De Oregel. Separately, a dark blue Maxwest flip phone was found in a kitchen cabinet drawer and later seized. A call was placed to 209-561-9819 (the number given to the UC by OJEDA-Lopez during the September 16, 2022 sample exchange), and the Maxwest flip phone rang.

32.  An inventory of items seized and a copy of the search warrant were left on the kitchen counter. The two cellular telephones found during the search warrant execution and their place of origin are described below:

- A black Android phone with IMEI: 353717345000733, more fully described in Attachment A-3, which was seized from the person of Alecsa OJEDA-De Oregel.

- A dark blue Maxwest flip phone with IMEI: 352839330915864 and IMEI: 352839330915872, more fully described in Attachment A-4, which was seized from the residence of Alecsa OJEDA De Oregel.

33.  On the same date (August 29, 2023), the Devices were processed into evidence and transported to the DEA Sacramento District Office for storage and safekeeping.

34.  Based on my training and experience with possessing a cellular telephone, and from what I have learned by consulting other law enforcement officers, I know that mobile telephones:

- preserve in their memory a history of incoming, outgoing, and missed calls;

- contain in their memory a telephone book, which allows the user to store numbers and other contact information;
- contain in their memory text messages sent, received, and drafted by the user;
- have a voicemail function that allows callers to leave messages when the user does not answer;
- contain other user-entered files such as "to-do" lists, which can provide evidence of a crime; and
- contain photographic data files, which can be evidence of criminal activity when the user took pictures of evidence of crime.

35.     Mobile telephone companies also store the data described in the above-paragraph on their own servers and associate the data with particular users' mobile telephones.  In addition, all of these functions can be found on a "smart" phone or similar handheld device, as well as evidence of email communications.

36.     Because there is probable cause to believe that Alberto OJEDA-Lopez, Maria MEDINA-Silvas, and Alecsa OJEDA-De Oregel possessed heroin and other controlled substances seized on August 29, 2023, in violation of 21 U.S.C. §§ 841(a)(1) and 946, I submit that there is also probable cause to believe that information and records relating to these activities will be found stored in the Devices seized and processed into evidence on that date, and in particular, will contain evidence of the types described in Attachment B.

37.     Based on my training and experience as an HSI Special Agent, I know that drug traffickers frequently use cellular telephones to facilitate their narcotics-trafficking activities. Specifically, cellphones are used to call and text suppliers, customers, associates, and partners to facilitate the purchase, packaging, transportation, and sale of illicit substances. Address books and contact lists often include the names, monikers, and contact information for individuals and businesses that are involved in criminal activity.  Furthermore, cellphones are equipped with digital cameras, and therefore often contain photographs and videos taken by individuals involved in drug trafficking, including "trophy" photographs of contraband, to include narcotics, cash, firearms, and other photographs of associates and business partners.

38.     I also know that people who traffic in narcotics usually negotiate or discuss the particulars of their transactions, to include the price, the volume of drugs involved, and the meeting location, in advance of any transaction.  Moreover, it has been my experience that these negotiations and discussions most frequently take place by way of phones, emails, and/or text messages.  I know that cellular telephones are commonly referred to as tools of the drug trade.

39.     Given my training and experience, I also believe that, based on the amount of heroin recovered in this case, I would expect that OJEDA-Lopez, MEDINA-Silvas, and OJEDA-De Oregel would have used their cellular telephones at some point in the days or weeks preceding August 29, 2023, to negotiate or discuss the details of the transaction from whomever supplied the drugs to them.

40.     Indeed, there is substantial evidence that the defendants in this case used the Devices in exactly this manner.  That is, the meetings with the UC were typically arranged over the telephone and/or by text message.  As a result, I know that these drug traffickers, in particular, use telephones to arrange drug transactions, discuss prices, and otherwise conduct illegal activity in support of their conspiracy.

41.     The Devices are currently in the DEA Sacramento's custody in Sacramento, California, and they have been in such possession since they were seized on August 29, 2023.  Based on my training and experience, I know the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into law enforcement's possession.

42.     As described above, the Devices are currently in the lawful possession of the DEA.  They came into the DEA's possession based on law enforcement's execution of court-approved search and arrest warrants.  Therefore, while the DEA might already have all necessary authority to examine the Devices, I seek these additional warrants out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

## TECHNICAL TERMS

43.     Based on my training and experience, I use the following technical terms to convey the following meanings:

- Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

- Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also

include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

- Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

- PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

- Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

44.    Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, internet access device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, who they communicated with, and the content of those communications.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

45.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the

9

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

46.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

- Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

- Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

- A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

- The process of identifying electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

- Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

47. *Nature of examination.* Based on the foregoing, and consistent with Rule 41 (e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. Investigating officers are authorized, at their discretion, to conduct an offsite search of the seized items for the property described. Investigating officers and those agents acting under the direction of the investigating officers are authorized to access all data on the cellular device to determine if the data contains the items as described above. If necessary, investigating officers are authorized to employ the use of outside experts, acting under the direction of the investigating officers, to access and preserve data on the cellular device. This includes the use of forensic software and the destructive process, commonly referred to as "chip off", which involves the dismantling of the cellular device to access the data stored on the memory chip. Those items that are within the scope of this warrant may be copied and retained by investigative officers. The examination may require authorities to employ

techniques, including computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

48.    *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

49.    Based on the foregoing, I submit that this affidavit supports probable cause for search warrants authorizing the forensic examination of the Devices described in Attachments A-1, A-2, A-3, and A-4 to seek the items described in Attachment B.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

_____/s/_____

Michael Barge
Special Agent
Homeland Security Investigations

Sworn to me and signed telephonically on October __4__, 2023.

Hon. Carolyn K. Delaney
United States Magistrate Judge

Approved as to form:

Aaron D. Pennekamp
Assistant United States Attorney

11

## <u>ATTACHMENT A-1</u>

<u>Description</u>:

A black Android phone in a translucent black case with IMEI: 350744861285715.  This Device is currently located in the DEA Sacramento evidence room in Sacramento, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT A-2**

Description:

A light blue Android phone in a black case with IMEI: 353910/11/099571/2.  The Device is currently located in the DEA Sacramento evidence room in Sacramento, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT A-3**

Description:

A black Android phone with IMEI: 353717345000733.  This Device is currently located in the DEA Sacramento evidence room in Sacramento, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-4

Description:

A dark blue Maxwest flip phone with IMEI: 352839330915864 and IMEI: 352839330915872.  This Device is currently located in the DEA Sacramento evidence room in Sacramento, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.  All records on the Devices described in Attachments A-1 through A-4 that relate to a violation of 21 U.S.C. §§ 841 and 846, involving Alberto OJEDA-Lopez, Maria MEDINA-Silvas, Alecsa OJEDA-De Oregel, and/or other known and unknown co-conspirators occurring after September 16, 2022 and through the present, including:

     a.  All names, words, telephone numbers, email addresses, time/date information, messages or electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephone and described as:

        i.  Incoming call history;
        ii.  Outgoing call history;
        iii.  Missed call history;
        iv.  Outgoing text messages;
        v.  Incoming text messages;
        vi.  Draft text messages;
        vii.  Telephone book (a/k/a "contacts list");
        viii.  Data screen or file identifying the telephone number associated with the mobile telephone searched;
        ix.  Data screen, file, or writing containing serial numbers or other information to identify the mobile phone searched;
        x.  Voicemail;
        xi.  Photographs;
        xii.  User-entered messages and/or notes (e.g., to-do lists); and
        xiii.  Any passwords used to access the electronic data described above.

     b.  lists of customers and related identifying information;

     c.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

     d.  any information related to sources of drugs (including names, addresses, phone numbers, photographs, or any other identifying information); and

     e.  any information recording a schedule and/or travel.

2.  Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.  As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4.   This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of )<br>A black Android phone in a translucent black case )<br>with IMEI: 350744861285715, CURRENTLY )<br>LOCATED AT 4328 Watt Avenue, Sacramento, )<br>California ) | Case No.       2:23-sw-1017 CKD |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-1, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____October 18, 2023_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:      October 4, 2023 at 1:14 pm                     *Carolyn K. Delaney*

                                                                              *Judge's signature*

City and state:      Sacramento, California                  Carolyn K. Delaney, U.S. Magistrate Judge
                                                                              *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| **Certification** |
|---|

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____

_____
　　　　　　　　Signature of Judge　　　　　　　　　　　　　　　　　　　　　　　Date

## <u>ATTACHMENT A-1</u>

<u>Description</u>:

A black Android phone in a translucent black case with IMEI: 350744861285715.  This Device is currently located in the DEA Sacramento evidence room in Sacramento, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.  All records on the Devices described in Attachments A-1 through A-4 that relate to a violation of 21 U.S.C. §§ 841 and 846, involving Alberto OJEDA-Lopez, Maria MEDINA-Silvas, Alecsa OJEDA-De Oregel, and/or other known and unknown co-conspirators occurring after September 16, 2022 and through the present, including:

    a.  All names, words, telephone numbers, email addresses, time/date information, messages or electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephone and described as:

        i.  Incoming call history;
        ii.  Outgoing call history;
        iii.  Missed call history;
        iv.  Outgoing text messages;
        v.  Incoming text messages;
        vi.  Draft text messages;
        vii.  Telephone book (a/k/a "contacts list");
        viii.  Data screen or file identifying the telephone number associated with the mobile telephone searched;
        ix.  Data screen, file, or writing containing serial numbers or other information to identify the mobile phone searched;
        x.  Voicemail;
        xi.  Photographs;
        xii.  User-entered messages and/or notes (e.g., to-do lists); and
        xiii.  Any passwords used to access the electronic data described above.

    b.  lists of customers and related identifying information;

    c.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d.  any information related to sources of drugs (including names, addresses, phone numbers, photographs, or any other identifying information); and

    e.  any information recording a schedule and/or travel.

2.  Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.  As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4.   This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.